UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY MOGDIS,

                 Plaintiff,                                Hon. Gordon J. Quist

v.                                                  Case No. 1:18-cv-82

COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.   Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.   *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).   The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence

supporting that decision.  *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).   It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).   In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 43 years of age on her alleged disability onset date.  (PageID.164). She  successfully  completed  high  school  and  worked  previously  as  a  home  health  aide.

-2-

(PageID.37-38).   Plaintiff applied for benefits on February 6, 2015, alleging that she had been disabled since July 10, 2013, due to degenerative disc disease, chronic back pain, generalized anxiety disorder, post-traumatic stress disorder (PTSD), and binge alcoholism.   (PageID.164-70, 195).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).   (PageID.89-162).   On February 1, 2017, Plaintiff appeared before ALJ Kari Deming with testimony being offered by Plaintiff and a vocational expert.   (PageID.59-87).   In a written decision dated March 15, 2017, the ALJ determined that Plaintiff was not disabled.   (PageID.26-39).   The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.   (PageID.17-21). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.   *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]   If the Commissioner can

---

[1]  1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

make a dispositive finding at any point in the review, no further finding is required.   *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).   The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.   *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.   *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.   While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.   *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) degenerative disc disease; (2) degenerative joint disease of the right shoulder; (3) obesity; (4) generalized anxiety disorder; (5) major depressive disorder; and (6) post-traumatic stress disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.   (PageID.28-31).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) she can sit for up to 30 minutes at one time; (2) she can stand/walk for up to 15 minutes at one

time; (3) whenever sitting, she must have the option to elevate her lower extremities to footstool height; (4) she can occasionally stoop, but can never crouch, crawl, kneel, or climb; (5) she can never be exposed to industrial vibration; (6) she can understand and remember simple instructions; (7) she can perform simple, routine tasks; (8) she can make only simple, work-related decisions; and (9) she can engage in predictable work activity, defined as that with only occasional changes in work setting or general nature of the tasks performed.   (PageID.31).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.   While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).   This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.   *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding.   Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 136,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.   (PageID.83-86).   This represents a significant number of jobs.   *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand

jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## I.    Medical Evidence

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contained copies of Plaintiff's medical treatment records.   The ALJ described this evidence as follows:

> The physical medical evidence of record supports the reduced sedentary residual functional capacity assessed in this decision. In July 2013, examination indicated lumbar, cervical and thoracic tenderness, but with normal sensation, negative straight leg raising, and a normal gait (12F/56; 12F/58). In August 2013, the claimant was treated with a right lumbar epidural steroid injection (25F/11). From September to October 2013, she had moderate and generalized tenderness of the cervical, thoracic and lumbar spine, but with otherwise normal findings including full strength, normal range of motion, intact sensation, negative straight leg raising, intact heel and toe walking and a normal gait (11F/64; 11F/69). In December 2013, the claimant underwent laminectomy L4 to L5, transforaminal lumbar interbody fusion L4 to L5, posterior spinal fusion L4 to L5, and nonsegmental instrumentation with screws at L4 to L5 (11F /41). A postoperative x-ray of the lumbar spine showed placement of pedicle screws and anterior interbody fusion device with normal spinal alignment (11F/21).
>
> In January and February 2014, the claimant had full strength, intact sensation, and a normal gait without an assistive device (2F/l; 2F/13-14). In August 2014, examination demonstrated spinal tenderness, reduced four out of five left triceps strength, and some difficulty with tandem walking (3F/9-11). However, Spurlings, Tinels and Phalen's testing were negative, and an x-ray of the lumbar spine indicated no change in alignment (3F/10-ll). An MRI of the cervical spine revealed chronic degenerative disc disease at C5 to C6 with mild narrowing of the left C6 foramen, and a small volume extruded disc masseter [*sic*] at C6 to C7 without cord compression or significant foraminal narrowing (5F/1). An MRI of the lumbar spine demonstrated postoperative changes, and considerable right foraminal encroachment at the L5 to S1 level (5F/2). In September 2014, an electromyography (EMG) indicated normal results (24F/9; 29F/48). The claimant attended occupational therapy until November 2014 (5F/15; 6F; 9F/1-6).

In October 2014, a CT scan of the lumbar spine showed postoperative changes at L4 to L5, and stable mild degenerative and discogenic changes throughout the other levels of the lumbar spine (8F/7). Physical examination continued to demonstrate generally normal findings including full strength, intact sensation, no lower extremity edema, and a normal gait (7F/12-13). In December 2014 and January 2014, the claimant was treated with a transforaminal epidural steroid injection at L5 to S12, and a sacroiliac injection on the left side (26F/8; 29F/37). In February 2015, an MRI of the lumbar spine demonstrated stable findings (11F/2). Examination indicated tenderness of the thoracic spine with spasticity, left shoulder reduced flexion and abduction, positive Hawkins and Neers testing, and left shoulder weakness with testing of supraspinatus (12F/3; 13F/13). In March 2015, an x-ray of the left shoulder revealed some calcification in the undersurface of the acromion and a mild spurring of the superior clavicle distally at the AC joint, but with an otherwise well maintained AC joint (14F/16). An MRI of the left shoulder showed AC joint osteoarthrosis and a probable impingement, and supraspinatus and subscapularis tendinopathy (15F/8).

In May 2015, the claimant had no cervical or lumbar tenderness, full strength, intact sensation, and a normal gait (17F/4). In October 2015, an MRI of the lumbar spine demonstrated postoperative change compatible with lumbar laminectomy and fusion at L4 to L5 level, mild levoconvex scoliosis and residual degenerative change of the lumbar vertebral column, but with no evidence of recurrent disc protrusion (28F/7). In December 2015, examination indicated diminished S1 sensation, but with negative straight leg raising, full strength, and a normal gait (26F/16-l 7). In January 2016, the claimant was noted to be two weeks out from a second lumbar surgery, and was doing well with improved lower extremity symptoms (27F/1). She ambulated normally, but was using a cane for assistance (27F/1).

In June 2016, it was noted that the claimant had completed a series of three right lateral femoral cutaneous nerve blocks, and was ambulating normally with no aids for walking (27F/13). In September 2016, she had right leg paresthesia in a stocking glove pattern (32F/10). In December 2016, an x-ray of the lumbar spine showed no hardware loosening or failure, but with slight increase in retrolisthesis of L2 on L3 (33F/3). In January 2017, examination showed normal muscle tone and a nonantalgic unassisted gait (34F/2). The claimant was treated with a lumbar epidural steroid injection (34F/3). These findings are consistent with the reduced sedentary residual functional capacity assessed in this decision.

The claimant's obesity has been considered pursuant to SSR 02-1p. The medical records demonstrate the claimant had a Body Mass Index (BMI) ranging from 40.24 to 42.79, in the obese range (2F/1; 3F/9; l0F/2; 12F/2; 17F/1; 24F/1; 27F/1; 27F/13; 32F/4). Obesity can cause or contribute to impairments in the musculoskeletal, respiratory, and cardiovascular body systems, and thus, I must consider the condition to determine if it alone or in combination with other impairments significantly limits an individual's physical or mental ability to do basic work activities (20 CFR, Subpt. P, App. l.00Q; SSR 02-lp). The combined effects of the claimant's obesity, along with her other impairments, support the reduced sedentary residual functional capacity described in this finding.

In addition, the psychological medical evidence of record supports the reduced mental residual functional capacity assessed in this decision. In October and December 2013, the claimant was alert, oriented, cooperative and well groomed, with an appropriate affect (11F/53; 11F/64). However, she was diagnosed with anxiety, depression, and a history of alcohol abuse (11F /44). In April 2014, the claimant was anxious and depressed, but with otherwise normal thought content, intact memory, normal attention and concentration, and an intact fund of knowledge (12F/21). From December 2014 to February 2015, examinations indicated she was alert, oriented, cooperative and well groomed with an appropriate affect (10F/3; 12F/2-3).

In May 2015, the claimant presented for a psychological consultative examination, whereby she had appropriate clothing and hygiene, and was oriented and cooperative with adequate insight, logical thought processes, and intact memory and concentration (16F/4). However, it was also noted that the claimant was briefly tearful (16F/4). She was diagnosed with major depressive disorder, chronic, moderate exacerbated by pain, generalized anxiety, posttraumatic stress disorder, mild, and alcohol abuse (16F/6). Subsequent mental status examinations demonstrated the claimant was alert, oriented, cooperative, and well groomed with an appropriate mood, full affect, and normal thought content (27F/4; 28F/11; 28/13; 32F/5; 32F/9; 34F/2). These findings are consistent with the reduced mental residual functional capacity assessed in this decision.

(PageID.32-34).

**II.**          **The ALJ's RFC Assessment**

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). As noted above, the ALJ concluded that Plaintiff can perform a limited range of sedentary work. Plaintiff advances two arguments that the ALJ's RFC assessment is not supported by substantial evidence, neither of which is persuasive.

A.          Concentration, Persistence, and Pace

At Step III of the sequential evaluation process, the ALJ found, in part, that Plaintiff experienced "moderate limitations" in her ability to concentrate, persist, or maintain pace. (PageID.30-31). Plaintiff argues that by failing to incorporate these limitations in her RFC assessment, and by extension the hypothetical posed to the vocation expert, the ALJ's reliance on the vocational expert's testimony cannot constitute substantial evidence at Step V of the sequential process.

Contrary to Plaintiff's assertions, the ALJ was not required to include in his RFC assessment the specific limitation that Plaintiff experiences moderate limitations in her ability to maintain concentration, persistence, or pace. Instead, the relevant question is simply whether Plaintiff's RFC, and thus the hypothetical question which the ALJ posed to the vocational expert, accurately portrayed Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

As noted above, the ALJ's RFC assessment, as well as the hypothetical posed to the vocational expert, incorporated several non-exertional limitations.  Specifically, the ALJ limited Plaintiff to understanding and remembering simple instructions; performing simple, routine tasks; making simple, work-related decisions; and the performance of predictable work activity with only occasional changes.  Plaintiff's argument that her limitations with respect to concentration, persistence, and pace are inherently inconsistent with these limitations is not persuasive.  *See, e.g., Lewicki v. Commissioner of Social Security*, 2010 WL 3905375 at *2-3 (E.D. Mich., Sept. 30, 2010) (limitation to unskilled work sufficiently accounted for claimant's moderate limitations with respect to concentration, persistence, and pace).  Plaintiff bears the burden through step four of the sequential process, the point at which her RFC is determined.  Plaintiff has failed to demonstrate that her RFC fails to adequately account for her non-exertional limitations.  To the contrary, the ALJ's RFC assessment is consistent with the administrative record and is, therefore, supported by substantial evidence    This argument is, therefore, rejected.

B.    Impact of Treatment

Plaintiff next argues for relief on the ground that the ALJ's RFC assessment failed to consider "the limiting effects of [her] treatment."  Specifically, Plaintiff argues that over the course of approximately five years she has averaged approximately one absence monthly to obtain treatment.  Plaintiff argues that the ALJ erred by failing to expressly include this "limitation" in his RFC assessment.  Even if the ALJ erred by including this specific limitation in his RFC assessment, such failure is clearly harmless given the vocational expert's testimony, (PageID.86), that one absence per month was not work preclusive.  *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Commissioner of Social Security*, 245

F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result")   Accordingly, this argument is rejected.

## III.          Medical Opinion Evidence

As discussed below, two of Plaintiff's care providers submitted statements that Plaintiff is far more limited than the ALJ recognized.   The ALJ, however, afforded less than controlling weight to these opinions.   Plaintiff argues that she is entitled to relief because the ALJ's rationale for discounting her treating physician's opinions is not supported by substantial evidence.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition.   *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).   An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."   *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."   *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).   The ALJ may reject the opinion of a treating physician where such

is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such.  *Id.* at 376.  In doing so, the ALJ considers the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.  *Id.* (citing 20 C.F.R. § 404.1527).  While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment.  *See, e.g., Oldham v. Astrue*, 509 F.3d

1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

        A.     Dr. Charles Barker

        On June 21, 2016, Dr. Barker completed a "Physician Report for Disability Benefits" in support of Plaintiff's attempt to obtain disability benefits through her employer. (PageID.862-65). The doctor reported that Plaintiff was unable to lift more than 8 pounds and could not engage in "prolonged" standing, sitting, or walking. (PageID.862-63). The doctor did not define or elaborate upon the meaning of "prolonged." With respect to Plaintiff's level of physical and mental impairment, the doctor selected the box that correlated with "marked limitation." (PageID.863). Dr. Barker did not define or elaborate upon the meaning of "marked limitation" or describe any specific limitations associated with such. The doctor also reported that Plaintiff "cannot safely bend, twist, reach as job needs [and] cannot handle emotional stress or crisis." (PageID.863).

        The ALJ afforded "little weight" to Dr. Barker's opinion, noting that such was "vague, and does not provide for specific workplace abilities and limitations." (PageID.36). With the exception of the doctor's opinion that Plaintiff was unable to lift more than 8 pounds, the ALJ's assessment is accurate. With respect to Dr. Barker's specific limitation that Plaintiff cannot lift more than 8 pounds, such is almost indistinguishable from the ALJ's conclusion that Plaintiff cannot lift more than 10 pounds. *See* 20 C.F.R. § 404.1567(a). The ALJ's failure to expressly articulate a reason for not adopting Dr. Barker's specific lifting limitation is harmless because Plaintiff has failed to establish that the ALJ's 10 pounds lifting restriction is not supported by substantial evidence. This argument is, therefore, rejected.

-13-

B.    Heather Dermyer, Ph.D.

On August 19, 2016, Dr. Dermyer completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation.   (PageID.947-49).    Plaintiff's abilities were characterized as "moderately limited" in seven categories and "not significantly limited" in twelve categories.    In one category, however, regarding Plaintiff's ability to complete a workday without symptom-related interruptions or an unreasonable number of rest periods, Plaintiff's ability was characterized as "markedly limited."   The ALJ afforded only "partial weight" to Dr. Dermyer's observations. (PageID.37).

First, the form that Dr. Dermyer completed does not constitute a "medical opinion" to which deference must be accorded.   *See* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (a medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *see also*, *Ashley v. Commissioner of Social Security*, 2014 WL 1052357 at *7-8 (W.D. Mich., Mar. 19, 2014).   Furthermore, as the ALJ concluded, the medical evidence does not support the conclusion that Plaintiff experiences limitations in any of the aforementioned categories which are inconsistent with her RFC.   Accordingly, this argument is rejected.

IV.    **Plaintiff's Subjective Allegations**

At the administrative hearing, Plaintiff testified that she is limited to a greater extent than the ALJ recognized.   For example, Plaintiff testified that she cannot stand for longer than 10 minutes and cannot even walk one city block.   (PageID.76).   Plaintiff reported that she has to

nap and lay down several hours each day.   (PageID.78-79, 81).   Plaintiff also reported that she experiences difficulty focusing and paying attention.   (PageID.79-80).   The ALJ discounted Plaintiff's subjective allegations on the ground that such were inconsistent with the evidence. (PageID.34-35).   Plaintiff argues that she is entitled to relief because the ALJ's decision to disregard her subjective complaints is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same).   As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."   20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).   Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard.

First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms.   *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016).   Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit his ability to perform work-related activities.   *Id.* at *4-9.[2]

---

[2] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p.   *Id.* at *1.   However, the adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements.   Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character."   *Ibid.*   As

As the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).   However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony").   It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand.   The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded.   *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).   As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to assess a claimant's subjective allegations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v.*

courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p."  *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

*Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007).   Instead, the ALJ's rationale

for discrediting a claimant's testimony "must be sufficiently specific to make clear to the individual

and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and

the reasons for that weight." *Id.* at 248.   Accordingly, "blanket assertions that the claimant is

not believable will not pass muster, nor will explanations as to credibility which are not consistent

with the entire record and the weight of the relevant evidence." *Id.*

       In support of his decision discounting Plaintiff's subjective allegations, the ALJ

observed:

> The claimant's overarching allegations of disability are less than
> fully consistent with the evidence of record for a variety of reasons.
> First, while the claimant testified that she could only stand for ten
> minutes and walk less than one city block, the record demonstrates
> she could do more (Hearing Testimony). The medical evidence of
> record indicated negative straight leg raises, normal strength, full
> range of motion, and intact sensation (2F/1; 2F/16; 3F/5; 3F/10;
> 7F/12-13; 10F/10; 11F/53; 11F/64; 11F/69; 12F/3; 12F/56; 12F/58;
> l7F/4; 19F/9; 26F/16-17; 27F/l; 27F/13; 32F/10; 33F/3; 34F/2).
> Moreover, the treatment notes demonstrated the claimant had a
> normal gait without the use of an assistive device, and no difficulty
> walking on toes and heels (2F/1; 2F/14; 3F/4; 3F/9; 5F/3; 7F/13;
> 10F/3; 10F/10; 11F/53; 11F/64; 11F/68; 12F/3; 12F/56; 1 7F/4;
> 18F/l; 19F/8; 26F/16; 27F/l; 27F/4; 27F/13; 32F/10; 33F/2; 34F/2).
> In September 2014, she reported that she could lift her thirty-two
> pound son, stand or walk up to forty-five minutes, and sit up to forty-
> five minutes (5F/12). These findings are consistent with the
> sedentary residual functional capacity. Additionally, the claimant
> alleged difficulty with focus and attention (Hearing Testimony).
> However, she was often alert and oriented with logical and goal
> directed thought processes, intact concentration, and adequate
> judgment and insight (10F/3; 11F/53; 11F/64; 12F/2; 12F/21;
> 16F/4-5; 27F/4; 28F/11; 28F/13; 32F/5; 34F/2). This evidence
> supports the mental residual functional capacity.
>
> The claimant has described daily activities, which are not limited to
> the extent one would expect, given the complaints of disabling
> symptoms and limitations. She reported caring for her young son
> and her older son who is mildly disabled (3E/2; Hearing Testimony).
> The claimant noted that she prepares meals, does light household

chores, shops in stores, and drives (3E/4; 5F/12; 16F/3- 4). In May 2016, she indicated hosting a party (30F/9). These activities are not consistent with her allegations of totally disabling limitations.

(PageID.34-35).

The ALJ's observations and conclusions are consistent with the evidence.  In sum, the ALJ's decision to discount Plaintiff's subjective allegations complies with the relevant legal standard and is supported by substantial evidence.  Plaintiff's argument that the ALJ failed to identify the evidence in support of his credibility assessment is clearly refuted by the portion of the ALJ's decision quoted above.  Equally unpersuasive is Plaintiff's argument that the ALJ should have weighed or assessed the evidence differently.  Accordingly, this argument is rejected.

## V.         The ALJ's Step Five Analysis

At step five of the sequential process, the burden shifts to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See* 20 C.F.R. § 404.1566; 42 U.S.C. § 423(d)(2)(A).  The Commissioner satisfies this requirement by demonstrating that there exists a significant number of jobs either: (1) in the region where the claimant resides, or (2) in multiple other regions of the country.  *See* 20 C.F.R. § 404.1566; 42 U.S.C. § 423(d)(2)(A).

At the administrative hearing, the vocational expert testified as to the number of jobs that existed in the national economy which Plaintiff could perform despite her limitations. (PageID.83-86).  The vocational expert did not testify as to the number of jobs which existed in the region where Plaintiff resides.   The vocational expert likewise did not testify whether the jobs which he identified in the national economy existed in more than one region of the United States.

-18-

Plaintiff argues that the ALJ's failure to establish whether the jobs in question existed in the region where he resides or in multiple other regions entitles her to relief.

As noted above, the Sixth Circuit has held that "[s]ix thousand jobs in the United States" satisfies the Commissioner's requirement to identify a significant number of jobs in the national economy which a claimant can perform.   In this matter, the vocational expert testified that there existed approximately 136,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.   Given that the vocational expert identified such a large number of jobs, it was reasonable for the ALJ "to infer that such jobs exist in several regions." *Vining v. Astrue*, 720 F.Supp.2d 126, 128 (D.Maine 2010) (expressly rejecting the argument that claimant was entitled to relief because the ALJ failed to specify whether the 10,000 jobs identified by the vocational expert existed in the region of claimant's residence or multiple regions).   This argument is, therefore, rejected.   Furthermore, Plaintiff has waived this issue by failing to raise such at the administrative hearing. *See, e.g., Hunt v. Commissioner of Social Security*, 2014 WL 345660 at *7 (W.D. Mich., Jan. 30, 2014).

## <u>CONCLUSION</u>

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).

Failure to file objections within such time waives the right to appeal the District Court's order.

*See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:   December 12, 2018                    /s/ Ellen S. Carmody
                                            ELLEN S. CARMODY
                                            United States Magistrate Judge